**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| B/E AEROSPACE, INC., § § *Plaintiff*, § § Case No. 2:16-cv-01417-JRG-RSP v. § § ZODIAC AEROSPACE, et al., § § *Defendants*. § | |

## REPORT AND RECOMMENDATION

The six defendants in this lawsuit are accused of infringing patents owned by plaintiff B/E Aerospace, Inc. The patents relate to aircraft lavatory enclosures. Two of the defendants allege that they are mere holding companies and, as a result, should be dismissed for lack of personal jurisdiction. Dkt. Nos. 42 and 43. The Court agrees and recommends that these defendants be dismissed. The remaining defendants move to dismiss or transfer the lawsuit for improper venue or for the convenience of the parties and witnesses. Dkt. Nos. 44 and 45. For the following reasons, it is recommended that the lawsuit be transferred to the United States District Court for the Central District of California.

## BACKGROUND

B/E Aerospace, Inc., accuses the defendants of infringing certain patents directed to lavatory enclosures with a curved outer wall that provides space for additional passenger seats in a commercial aircraft. *See* Compl., Dkt. No. 1. Further detail can be found in the Court's Report and Recommendation on B/E's motion for a preliminary injunction. *See B/E Aerospace, Inc. v. Zodiac Aerospace, et al.*, No. 2:16-cv-01417-JRG-RSP, 2017 WL 1684540, at *1 (E.D. Tex. Apr.

1

17, 2017), *report and recommendation adopted*, No. 2:16-cv-01417-JRG-RSP, 2017 WL 1633330 (E.D. Tex. May 2, 2017).

### 1. B/E Aerospace

B/E, the owner of the patents-in-suit, is a Delaware corporation headquartered in Wellington, Florida. Compl. ¶ 1, Dkt. No 1. The inventors listed on the patents-in-suit live in the state of Washington. *See* Dkt. No. 45-9 ¶ 5. B/E's lavatory business unit is also located in Washington. *See id.* ¶ 6.

### 2. C&D Zodiac, Inc.

C&D Zodiac, Inc. is incorporated in Delaware and headquartered in Huntington Beach, California. Hr'g Tr. at 142:11-13, Dkt. No. 144; Najd Decl. ¶ 2, Dkt. No. 45-5; Compl. ¶ 7, Dkt. No. 1. C&D Zodiac does not have a place of business in Texas. Najd Decl. ¶ 19, Dkt. No. 45-5. C&D Zodiac designs and manufactures aircraft enclosures, such as lavatories, from its Huntington Beach location. *See id.* ¶ 3-6, Dkt. No. 45-5.

### 3. Heath Tecna, Inc.

Heath Tecna, Inc. is a Delaware corporation headquartered in Bellingham, Washington. Compl. ¶ 6, Dkt. No. 1; Huard Decl. ¶ 2. One of Heath Tecna's directors, Vince Huard, submitted a declaration stating that Heath Tecna "does not have any offices, documents, or employees in Texas." Huard Decl. ¶ 6, Dkt. No. 45-3. Heath Tecna has assisted C&D Zodiac with efforts to market and sell C&D Zodiac's aircraft interior components. *Id.* ¶ 4. Heath Tecna "consents to jurisdiction" in the Central District of California. *See* Dkt. No. 45 at 7-8.

B/E originally contended that Heath Tecna has a facility in Spring, Texas, which is in the Southern District of Texas. *See* Dkt. No. 100 at 2. To support this assertion, B/E pointed to a declaration submitted by Laura Henderson, a Heath Tecna Human Resources Manager, in a lawsuit

2

filed by B/E in this district in 2014. *See* Dkt. No. 100-8. The defendants moved to transfer that lawsuit, and Ms. Henderson's declaration stated that the "facility" referred to in B/E's response to the motion to transfer "is a rented office space occupied by only a single sales representative." *Id.* ¶ 4. More recently, Mr. Huard testified that this facility closed several years ago and that the employee who worked at the facility relocated back to the Pacific Northwest. Huard Dep. at 47:21-25, Dkt. No. 185-2.

### 4. Zodiac Seats US LLC

Zodiac Seats US LLC is a Texas corporation headquartered in Gainesville, Texas, which is in this district. Compl. ¶ 5, Dkt. No. 1; *see* Funk Decl. ¶ 2, Dkt. No. 45-2. Zodiac Seats designs, manufactures and sells aircraft passenger seats but otherwise has no involvement in the design, marketing, or sales of the aircraft enclosures manufactured by C&D Zodiac. *Id.* ¶ 4. There is evidence that Zodiac Seats participates in efforts to integrate aircraft seats with the lavatory enclosures manufactured by C&D Zodiac. *See* Hr'g Tr. at 64:12-65:1, Dkt. No. 144.

Zodiac Seats has a facility in Rancho Cucamonga, California, Funk Decl. ¶ 7, Dkt. No. 45-2. Rancho Cucamonga is in San Bernardino County, which is within the Central District of California. 28 U.S.C. § 84(c)(1). Aircraft passenger seats are manufactured and shipped from Zodiac Seats' Rancho Cucamonga facility. Funk Decl. ¶ 7, Dkt. No. 45-2.

### 5. Northwest Aerospace Technologies, Inc. (d/b/a Zodiac Northwest Aerospace Technologies)

Zodiac Northwest Technologies is a Washington corporation headquartered in Everett, Washington. Compl. ¶ 8; Schmidt Decl. ¶ 2, Dkt. No. 45-7. Zodiac Northwest does not manufacture aircraft enclosures. Schmidt Decl. ¶ 4, Dkt. No. 45-7. Rather, Zodiac Northwest provides kits to commercial airlines for installing aircraft interior components, such as lavatories, as part of aircraft retrofitting processes in which existing aircraft are updated with modern

components. *Id.* ¶ 4-6. Zodiac Northwest does not have any offices or employees in Texas. *Id.* ¶ 7. Zodiac Northwest "consents to jurisdiction" in the Central District of California. *See* Dkt. No. 45 at 8.

### 6. Zodiac Aerospace

Zodiac Aerospace is a company (a "société anonyme" or "S.A.") organized under the laws of France. Zarrouati Decl. ¶ 2, Dkt. No. 45-8. Zodiac Aerospace is a holding company that owns, through a domestic subsidiary (Zodiac US Corp.), Zodiac Seats, Heath Tecna, Zodiac Northwest, and C&D Zodiac. *Id.* ¶ 3. Olivier Zarrouati, Zodiac Aerospace's CEO, submitted a declaration stating that Zodiac Aerospace "does not control or direct any of the various activities" of its United States subsidiary or the other Zodiac entities. *Id.* ¶ 4. Zodiac Aerospace does not maintain any presence in the United States or Texas, *see id.* ¶¶ 5-14, but because Zodiac Aerospace is a foreign corporation, Zodiac Aerospace does not contend that venue is improper in this district, *see* Dkt. No. 185 at 1. n.1. Zodiac Aerospace does, however, seek dismissal for lack of personal jurisdiction and insufficient service of process. *See* Dkt. No. 45 at 5-6 n.2.

### 7. Zodiac US Corporation

Zodiac US is a Delaware corporation headquartered in New Jersey, and the company does not have a presence in Texas. Malone Decl. ¶¶ 2, 6-15, Dkt. No. 45-4.  Like Zodiac Aerospace, Zodiac US is a holding company that owns Zodiac Seats, Heath Tecna, Zodiac Northwest, and C&D Zodiac. *Id.* ¶¶ 3-4, Dkt. No. 45-4. Zodiac US is a subsidiary of Zodiac Aerospace. *Id.* John Malone, Zodiac US's CFO, submitted a declaration stating that Zodiac US does not control or direct any Zodiac entity's business activities. *Id.* ¶ 5. Like Zodiac Aerospace, Zodiac US seeks dismissal for lack of personal jurisdiction. *See* Dkt. No. 45 at 5-6 n.2. Although Zodiac Aerospace and Zodiac US seek dismissal, both defendants contend that if jurisdiction is proper, the lawsuit

against them would be more conveniently litigated in the Central District of California because all relevant Zodiac witnesses and documents are located there. *See id.* at 5-6.

## DISCUSSION

### 1. Motions to Dismiss for Lack of Personal Jurisdiction

Zodiac Aerospace, the holding company headquartered in France with no presence in the United States, and Zodiac US, the United States holding company headquartered in New Jersey, move to dismiss the action against them for lack of personal jurisdiction. *See* Dkt. Nos. 42 and 43. Because B/E has not established that these defendants directed activities to the forum state that relate to B/E's patent infringement claims, and because there is insufficient evidence to impute the Zodiac subsidiaries' activities to the holding companies, the motions to dismiss should be granted. In addition, because there is insufficient evidence that the transferee court could exercise jurisdiction over these defendants, the Zodiac holding companies should not be transferred to the Central District of California with the remaining defendants.

Federal Circuit law governs whether personal jurisdiction exists over a party accused of patent infringement, *Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1230 (Fed. Cir. 2010), though the question of whether a subsidiary's acts should be imputed to a corporate parent may be governed by Fifth Circuit law, *see Insituform Techs., Inc. v. CAT Contracting, Inc.*, 385 F.3d 1360, 1380 (Fed. Cir. 2004). The Federal Circuit applies a three-prong test to determine if specific jurisdiction exists: (1) whether the defendant purposefully directed activities at residents of the forum; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair. *Nuance*, 626 F.3d at at 1231. Because the Court held an evidentiary hearing on defendants' jurisdictional motions, *see* Dkt. No. 62; Hr'g Tr.

at 13:10-13, Dkt. No. 144, B/E must establish personal jurisdiction by a preponderance of the evidence. *See Felch v. Transportes Lar-Mex SA DE CV*, 92 F.3d 320, 326 (5th Cir. 1996).

A parent corporation may be directly involved in the activities of its subsidiaries without the subsidiaries' activities being imputed to the parent. *See United States v. Bestfoods*, 524 U.S. 51, 72 (1998). Even if the standard for imputation in the context of jurisdiction is lower than that for liability, "corporate form is not to be lightly cast aside." *See 3D Sys., Inc. v. Aarotech Labs., Inc.*, 160 F.3d 1373, 1380-81 (Fed. Cir. 1998). In general, corporate form must not be disregarded "unless specific, unusual circumstances call for an exception" or "unless there is at least specific intent to escape liability for a specific tort." *See id.* at 1380 (citations omitted); *see also Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1468 (Fed. Cir. 1998). Unusual circumstances justifying disregard for corporate form can be contrasted with routine parental involvement, which may include activities such as monitoring the subsidiary's performance, supervising finance and budget decisions, and articulating general policies and procedures. *See Bestfoods*, 524 U.S. at 72.

In response to Zodiac Aerospace's and Zodiac US's motions to dismiss for lack of personal jurisdiction, B/E relies primarily on the activities of Zodiac Seats, the one defendant located in Texas. *See* Dkt. No. 98. B/E submitted numerous documents allegedly supporting their contention. *See id.* at 12-13. B/E's evidence does not establish minimum contacts by Zodiac Aerospace and Zodiac US that give rise or relate to B/E's patent infringement claims. Furthermore, there is not sufficient evidence to justify disregarding corporate form.

B/E contends that Zodiac Aerospace is the parent company of "a corporate group doing business under the name 'Zodiac Aerospace.'" *See* Dkt. No. 188 at 2. To support the existence of this corporate "group," B/E cites a declaration by Mr. Zarrouati, Zodiac Aerospace's CEO. *See*

Dkt. No. 42-2. The paragraph of the declaration cited by B/E, however, says nothing about any "corporate group," much less a corporate group named "Zodiac Aerospace." *See id.* ¶ 3. Mr. Zarrouati's declaration at most establishes that Zodiac Aerospace owns the other Zodiac defendants but exercises no direction or control over their business activities. *See id.* ¶¶ 3-5.

B/E highlights Zodiac Aerospace's website, which touts the company's "worldwide" location and allows a user to filter by company branch to get information regarding Zodiac Seats. *See* Dkt. No. 102-1 at 1. B/E emphasizes that Zodiac Aerospace maintains this single website for all of its subsidiaries. *See* Dkt. No. 188 at 2. There is no contrary evidence suggesting that each subsidiary maintains its own web presence. There is also, however, no authority standing for the proposition that a consolidated website would allow a court to impute contacts of a subsidiary to a corporate parent, particularly when there is no evidence that sales of the accused product are made through the website and distributed through a channel targeted at the forum. *Cf. Cardsoft, Inc. v. Verifone Holdings, Inc.*, No. 2-08-CV-098 (TJW), 2009 WL 361069, at *1 (E.D. Tex. Feb. 10, 2009).

Similarly, B/E indicates that Zodiac Seats employees "hold themselves out on LinkedIn as Zodiac Aerospace employees." *Id.* at 2. Although it appears that some of these employees associate their LinkedIn pages with "Zodiac Aerospace," the vast majority of the LinkedIn profiles specify that the employee works at Zodiac Seats. *See* Dkt. No. 102-17, 102-18. Even the LinkedIn page of Zodiac Seats' CEO indicates his affiliation with Zodiac Aerospace, but the detailed description of the CEO's position clarifies that his responsibility is confined to the operations of Zodiac Seats. *See* Dkt. No. 102-18. The same is true of Zodiac Aerospace's job advertisements in the district, which make it clear that the employer is Zodiac Seats.

The remaining evidence proves no more. The fact that documents of the Zodiac subsidiaries bear the logo of their corporate parent, for example, merely indicates a corporate relationship, not that Zodiac Aerospace or Zodiac US exhibit an unusual amount of direction or control over their subsidiaries. *See Manville Sales Corp. v. Paramount Sys., Inc.*, 917 F.2d 544, 552, 16 USPQ2d 1587, 1593 (Fed. Cir. 1990). The same is true of the executives' visits to Zodiac Aerospace's headquarters in France. Such visits are consistent with general management, not disregard for corporate form. These activities are in all respects consistent with a typical corporate relationship, which does not justify disregarding corporate form. *See 3D Sys.*, 160 F.3d at 1380-81.

The cases cited by B/E, in which a court found jurisdiction over a corporate parent, are all distinguishable. For one, the decisions cited by B/E found personal jurisdiction without an evidentiary hearing, i.e., without applying the preponderance of the evidence burden. More important, the cases all rely in one form or another on a stream of commerce theory. In the only relevant Federal Circuit case cited by B/E, the court emphasized that there were sufficient allegations or evidence that the corporate parent itself "promotes the sale of [the accused] products in California by providing the names and contact information for retail stores located in California as well as online stores that sell the FineReader product." *Nuance*, 626 F.3d at 1235. The cases cited from this district also emphasize that there were allegations (which were taken as true without an evidentiary hearing) that the parent corporation itself delivered the accused product into the stream of commerce. *See Cardsoft*, 2009 WL 361069, at *1; *see also GSK Technolgies, Inc. v. Schneider Elec., S.A.*, No. 6:06-cv-361, 2007 WL 788343, at *2 (E.D. Tex. Mar. 14, 2007).

B/E has not met its burden of establishing that either Zodiac Aerospace or Zodiac US directed activities related to B/E's infringement claims to the forum. In addition, while the

evidence undoubtedly indicates a relationship between Zodiac Seats US (and the other subsidiaries) and the Zodiac holding companies, nothing in the record stands out as sufficient to disregard corporate form. Indeed, if the Court were to ignore corporate form in this case, there would rarely be a case in which corporate form would be respected. *See 3D Sys.*, 160 F.3d at 1380-81.

Finally, the principal concern with imputing activities of a corporate relative to another entity in the personal jurisdiction context is a tortfeasor that may escape liability through a corporate shield. *See id.* at 1380. That concern is simply not present here. The evidence establishes that Zodiac Aerospace and Zodiac US do not make or sell anything, much less the allegedly infringing lavatories. Other than ownership, there is no credible evidence that the holding companies are involved in the allegedly infringing conduct.

Accordingly, the Court recommends that Zodiac Aerospace and Zodiac US be dismissed without prejudice for lack of personal jurisdiction. The Court cannot conclude on the current record that the lawsuit could have been brought against the Zodiac holding companies in the Central District of California, and thus these defendants should not be transferred.

**2. Motions to Dismiss or Transfer for Improper Venue or Convenience**

**(a) Improper Venue**

The remaining defendants move to dismiss or transfer the lawsuit for improper venue or for the convenience of the parties and witnesses. *See* Dkt. Nos. 44 and 45. Three of the four defendants, C&D Zodiac, Heath Tecna, and Zodiac Northwest, move to dismiss the lawsuit under Rule 12(b)(3) for improper venue. Dkt. No. 44. These three defendants, in addition to the fourth remaining defendant, Zodiac Seats, also move to transfer for convenience to the Central District of California. Dkt. No. 45. Because the parties have already completed a significant amount of

work and discovery, dismissing the lawsuit is not an appropriate or fair disposition, even if venue is improper. *See* § 1406(a); *Aguacate Consol. Mines, Inc. of Costa Rica v. Deeprock, Inc.*, 566 F.2d 523, 524 (5th Cir. 1978). Accordingly, the Court considers only whether transfer is appropriate.

Venue in patent infringement actions is proper only where (1) "the defendant resides" or (2) "where the defendant has committed acts of infringement and has a regular and established place of business." 28 U.S.C. § 1400(b); *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1520 (2017). A defendant "resides" only in its state of incorporation. *TC Heartland*, 137 S. Ct. at 1521. The second prong of § 1400(b) requires a "regular and established place of business," which must be (1) "a physical place in the district," (2) that is "a regular and established place of business," and (3) "it must be the place of the defendant." *In re Cray Inc.*, 871 F.3d 1355, 1360 (Fed. Cir. 2017).

Before transferring a lawsuit under § 1404(a) or § 1406(a), there must be a determination that the lawsuit could have been filed in the transferee court. *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*Volkswagen II*"); *Herman v. Cataphora, Inc.*, 730 F.3d 460, 466 (5th Cir. 2013). B/E does not dispute that the defendants would be subject to personal jurisdiction in the Central District of California. *See* Dkt. Nos. 97 and 100. B/E also concedes that venue would be proper as to these defendants in that district. *See* Dkt. No. 188 at 12.

Venue in this district, by contrast, is improper for C&D Zodiac, Heath Tecna, and Zodiac Northwest, at least if these defendants are considered to be separate from Zodiac Seats, the only defendant with a physical place of business in the district. These defendants preserved their improper venue defense based on *TC Heartland*, even though the defendants moved to dismiss before the Supreme Court issued its decision. *See* Dkt. No. 44 at 1. B/E does not contend that the

defense has been waived. C&D Zodiac, Heath Tecna, and Zodiac Northwest do not have any place of business in Texas. *See* Najd Decl. ¶ 19, Dkt. No. 45-5; Huard Decl. ¶ 6, Dkt. No. 45-3; Schmidt Decl. ¶ 7. Consequently, venue is improper for these defendants because they are not incorporated in Texas and do not have a physical place of business within the district. *See Cray*, 871 F.3d at 1360.

The fact that venue is proper for Zodiac Seats does not change the conclusion. Where there are multiple parties or multiple claims in a lawsuit, venue must be proper for each defendant and each claim.[1] The provision in § 1391 permitting suit in a district where "any defendant is subject to the court's personal jurisdiction" when there is no district in which the lawsuit could have been brought cannot apply in patent cases. *See* § 1391(b)(3). The Supreme Court concluded that § 1391 does not govern venue in patent cases because it does not provide an exception or supplement to § 1400(b). *See TC Heartland*, 137 S. Ct. at 1521. B/E does not contend otherwise.

The only wrinkle in the analysis is B/E's argument that Zodiac Seats' physical place of business in the district should be imputed to the other defendants, or similarly that all the Zodiac defendants should be considered one for venue purposes. For the same reasons that Zodiac Seats' activities should not be imputed to the corporate parents, B/E's argument about the remaining defendants is not persuasive. As this Court and other courts have already determined in the wake of *TC Heartland*, for a "regular and established place of business" of a subsidiary to be imputed

---

[1] *See Collins v. Doe*, No. CIV.A. H-10-2882, 2012 WL 1414246, at *3 (S.D. Tex. Apr. 23, 2012); *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109, 1126 (C.D. Cal. 2009); *Kelly v. Echols*, No. CIVF05118AWISMS, 2005 WL 2105309, at *11 (E.D. Cal. Aug. 30, 2005); *Pacer Global Logistics, Inc. v. AMTRAK,* 272 F.Supp.2d 784, 788 (E.D. Wis. 2003); *Gatz v. Ponsoldt,* 271 F.Supp.2d 1143, 1160 (D. Neb. 2003); *Koh v. Microtek Int'l, Inc.,* 250 F.Supp.2d 627, 630 (E.D. Va. 2003); *Bearse v. Main St. Invs.,* 170 F.Supp.2d 107, 116 (D. Mass. 2001); *Hickey v. St. Martin's Press,* 978 F.Supp. 230, 240-41 (D. Md. 1997); *Payne v. Marketing Showcase, Inc.,* 602 F.Supp. 656, 658 (N.D. Ill. 1985); *Eaby v. Richmond,* 561 F.Supp. 131, 140 (E.D. Pa. 1983).

to a corporate relative, there must be a lack of "formal corporate separateness, which is a difficult standard to meet." *See Soverain IP, LLC v. AT&T, Inc.*, No. 2:17-cv-00293-RWS-RSP, 2017 WL 5126158, at *1 (E.D. Tex. Oct. 31, 2017) (citing Federal Practice & Procedure § 3823 & nn.24-26); *see also Symbology Innovations, LLC, v. Lego Systems, Inc.*, No. 2:17-CV-86, 2017 WL 4324841 (E.D. Va. Sept. 28, 2017).

As explained above, neither the Zodiac corporate parents nor the other corporate relatives are sufficiently involved in Zodiac Seats' operations to justify imputing Zodiac Seats' presence in the district to the other defendants. Moreover, assuming the lawsuit against the defendants for which venue is improper should be transferred, there is no legitimate reason to retain the action against Zodiac Seats in this district. Such an outcome would result in needless inefficiencies, particularly for a defendant that appears to have little direct involvement in the manufacture and sale of the accused lavatory enclosures. As became clear to the Court at the preliminary injunction hearing, the aircraft passenger seats referred to in the claims of the asserted patents are simple prior art seats.[2] Thus, there is no reason to believe that the design or manufacture of the seats themselves will play any real part in the trial.

**(b) Convenience**

Even if venue is considered proper for the defendants seeking transfer, for example if Zodiac Seats' presence in the district *were* imputed to the remaining defendants, transfer is appropriate under § 1404(a). The Fifth Circuit takes a practical approach to transfer under § 1404(a) or § 1406(a), permitting transfer in the alternative under either statute regardless of whether the transferor court lacks personal jurisdiction or proper venue. *See Bentz v. Recile*, 778

---

[2] For example, compare Figures 1 and 2 in each of the '476, '292, '742, and '641 patents. *See* Dkt. No. 1, Exs. A, C, F, and H.

F.2d 1026, 1028 (5th Cir. 1985); *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1107 (5th Cir. 1981). The point is to efficiently move a lawsuit to a district where it can be properly resolved. *See id.*

Such an analysis turns on the relevant private and public interest factors. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*"). The private factors include: (1) ease of access to evidence ("sources of proof"); (2) subpoena power over potential witnesses; (3) cost of attendance for willing witnesses; and (4) other practical problems. *Volkswagen II*, 545 F.3d at 315.The public factors include: (1) administrative difficulties flowing from court congestion; (2) local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws. *Volkswagen I*, 371 F.3d at 203. To meet the burden of showing that the Central District of California is clearly more convenient, the defendants must show that these private and public interest factors on balance clearly weigh in favor of transfer. *See id.*

Defendants have established that the bulk of the sources of proof, including documents and witnesses, are located on the West Coast, either in or near the Central District of California or in the Pacific Northwest. The bulk of the relevant evidence will likely come from the defendant accused of making and selling the accused curved-wall lavatories, C&D Zodiac. Relevant evidence in patent cases often comes from the accused infringer, which in this case is most clearly C&D Zodiac. *See In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). Evidence from Zodiac Seats, to the extent such evidence is relevant to the alleged infringement, would be more conveniently accessed from this district, but Zodiac Seats' convenience cannot alone outweigh the significance of documents and witnesses located on the West Coast. Even Zodiac Seats has a facility in Rancho Cucamonga, California, which manufactures the relevant aircraft passenger seats. *See* Funk Decl. ¶ 7, Dkt. No. 45-2. B/E's own relevant facility and the inventors of patents-

in-suit are located on the West Coast. *See* Dkt. No. 45-9 ¶¶ 5-6. The sources of proof factor therefore weighs in favor of transfer.

A district court's subpoena power is governed by Federal Rule of Civil Procedure 45. For purposes of § 1404(a), there are three important parts to Rule 45. *See VirtualAgility, Inc. v. Salesforce.com, Inc.*, No. 2:13-CV-00011-JRG, 2014 WL 459719, at *4 (E.D. Tex. Jan. 31, 2014). First, a district court has subpoena power over witnesses who live or work within 100 miles of the courthouse. *See* Fed. R. Civ. P. 45(c)(1)(A). Second, a district court has subpoena power over residents of the state in which the district court sits—a party or a party's officer that lives or works in the state can be compelled to attend trial, and nonparty residents can be similarly compelled as long as their attendance would not result in "substantial expense." *See* Fed. R. Civ. P. 45(c)(1)(B)(i)-(ii). Third, a district court has nationwide subpoena power to compel a nonparty witness's attendance at a deposition within 100 miles of where the witness lives or works. *See* Fed. R. Civ. P. 45(a)(2), 45(c)(1).

The transferee district has trial subpoena power over more of the relevant witnesses than does this Court. Of course, the transferee court has the same deposition subpoena power as this Court. Even non-party witnesses, such as the airline employees who B/E alleges have relevant knowledge, could be deposed, and the Fifth Circuit views a videotape deposition as an acceptable substitute for live testimony because a videotape "allows jurors to gauge the witness's attitude reflected by his motions, facial expressions, demeanor and voice inflections." *Battle ex rel. Battle v. Mem'l Hosp. at Gulfport*, 228 F.3d 544, 554 (5th Cir. 2000). In addition, employees of a party or witnesses that a party otherwise controls are often willing witnesses for whom a trial subpoena is not necessary. *See Texas Data Co. v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 643 (E.D. Tex.

2011) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947); *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 (1981)). Accordingly, the subpoena factor is at best neutral.

Witness convenience and costs of attending trial are important considerations. *In re Genentech*, 566 F.3d 1338 at 1343. "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen I*, 371 F.3d at 204-05. "Additional distance means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Id.* at 205.

Aside from Zodiac Seats employees who live in Texas, and other potential non-party airline employees, the bulk of the witnesses who will testify would find venue more convenient in the Central District of California. The Court rarely tries a patent case with more than a handful of fact witnesses, and it is likely that most if not all the fact witnesses in this case would travel to trial from the West Coast, and this would include B/E's potential fact witnesses. The cost and convenience factor therefore favors transfer.

The parties dispute whether transferring this case to the Central District of California would be judicially efficient. *See In re Vistaprint Ltd.*, 628 F.3d 1342, 1344 (Fed. Cir. 2010) (discussing relevance of judicial economy to the analysis). B/E contends that the time to trial in this district weighs in favor of transfer, but the time to trial factor "is the 'most speculative' . . . and in situations where 'several relevant factors weigh in favor of transfer and others are neutral, the speed of the transferee district court should not alone outweigh all of the other factors.'" *Texas Data Co., LLC v. Target Brands, Inc.*, 771 F. Supp. 2d 630, 645 (E.D. Tex. 2011) (citing

15

*Genentech*, 566 F.3d at 1347). Accordingly, because the Defendants moved promptly for transfer, any delay in the transferee district does not overwhelm the private interest factors weighing in favor of transfer. This is especially true given B/E's announced intention to add another patent to the suit. *See* Dkt. No. 194.

B/E contends that the local interest factor favors transfer because of Zodiac Seats' presence in the district. Similarly, at least C&D Zodiac, the primary defendant accused of infringement, has employees in the Central District of California, as does Zodiac Seats. Thus, the local interest factor is neutral.

Both parties agree that the conflict of law factor is not relevant because this case involves only patent law, which both federal courts are equipped to handle. In sum, the public interest factors do not overcome the significance of the private interest factors, which on balance favor transfer. Accordingly, even if venue for the defendants seeking transfer was proper by virtue of Zodiac Seats' presence in the district—and § 1404(a) applied—venue would be clearly more convenient in the Central District of California.

## CONCLUSION

For these reasons, it is **RECOMMENDED** that:[3]

(1) Zodiac Aerospace's motion to dismiss for lack of personal jurisdiction, Dkt. No. 42, should be granted;

---

[3] A party's failure to file written objections to the findings, conclusions, and recommendations contained in this report within fourteen days from the entry of this Order shall bar that party from de novo review by the district judge of those findings, conclusions, and recommendations and, except on grounds of plain error, from appellate review of unobjected-to factual findings and legal conclusions accepted and adopted by the district court. Fed. R. Civ. P. 72(b)(2); *see Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

(2) Zodiac US Corporation's motion to dismiss for lack of personal jurisdiction, Dkt. No. 43, should be granted;

(3) All claims against Zodiac Aerospace and Zodiac US should be dismissed without prejudice; and

(4) This lawsuit, with its remaining claims against C&D Zodiac, Inc., Heath Tecna, Inc. Zodiac Seats US LLC, Northwest Aerospace Technologies, Inc. (d/b/a Zodiac Northwest Aerospace Technologies) should be transferred to the United States District Court for the Central District of California pursuant to 28 U.S.C. §1406(a).

**SIGNED this 29th day of November, 2018.**

_____
ROY S. PAYNE
UNITED STATES MAGISTRATE JUDGE